to the next case, which is the U.S. v. Noel. Good morning. Good morning. You may proceed. Thank you. Thank you, Your Honor. Good morning. May it please the Court, my name is Ricardo Basquez. I'm here on behalf of the appellant, Marcus Noel. With me are three rows of students from the University of Miami Federal Appellate Clinic. I want to thank the Court for the opportunity to have oral argument in this case because the issue before this Court is a pure legal issue. The parties agree on all the relevant facts, and the parties even agree on the legal principles that govern the case. The only point of disagreement is on how those legal principles apply to those facts. The case is controlled by this Court's decision in Belizec-Hurtado. That was an MDLA prosecution, and this case is not, but in that case this Court explained that customary international law is not something that gives Congress the ability to domesticate ordinary street crime like the government is attempting to do in this case. The parties agree that nothing in the record indicates that Mr. Noel had any political motive or knew he was targeting an American citizen when he committed this kidnapping in Haiti. The person he kidnapped was, in fact, residing in Haiti, had Haitian identification documents, and nothing in the record shows any nexus to the United States for this crime whatsoever. The government's position is that notwithstanding those facts, this crime can still be prosecuted in federal court under the Hostage-Taking Act. The Hostage-Taking Act, as the parties also agree, was enacted to effectuate- Let me begin with what I take is the first of two arguments, although I think that they run together and you link them. But the first thing I read you to say is that there was a requirement the prosecution show that Mr. Noel had knowledge of his hostage's citizenship, right? Under the circumstances of this particular case. What is there about this statute that suggests that they had to know, I'm talking about 1203, that the defendant had to know that the hostage he had seized was, in fact, an American hostage? Your Honor, the reason that that's required under the fact of this case is because this is a statute that does, in fact, apply extraterritorially. And when a statute applies extraterritorially, jurisdiction must comport with due process. The government agrees with that, as they say on page 15 of their brief. I think all of that is right. All I'm asking is, and you may be right anyway that you need a sufficient nexus to be found somewhere. But what I don't understand is why the defendant had to know the victim hostage was an American. The reason I raise it, just to cut right to the chase, is it seemed to me that in order to establish the elements of the offense, there has to be a seizing or a detaining of a person. There's no question about that here. There has to be a threat to kill, injure, or continue to detain. You've got that. And there has to be demand on a third party or the government to comply with the demands in exchange for release. All of that is present. And it seems to me the fourth element in the case, that is to say that the hostage, be an American citizen, is a jurisdictional conferring element. No more, no less. And that being the case, I do not understand why the defendant would have to know the hostage was an American. Your Honor, we don't contend that that would be a rule applicable in every single prosecution. However, the reason that in this case that must be the rule is because of footnote 9 in United States v. Fiola, which very clearly says that if Congress, that case of course involved an assault on a federal agent, and the Supreme Court said that the defendant didn't need to know that the agent was a federal agent. But footnote 9 says that Congress, were it only seeking to deter assault in general and not assaults that interfere with the United States government's operation, then the statute would not be constitutional. And so in this case, because it's not like the cases the government cites, the government relies on three cases, Ali, Murillo, and Neal. None of those cases involve anything that could be called ordinary street crime. Ali involved a Somali pirate taking a ship and negotiating ransom for the ship. The ship was a Danish ship. It involved all sorts of international implications. There were U.S. people on the ship. Murillo was the murder of a DEA agent. And Neal was an assault on a cruise ship that came and left from California. So all of those cases are different in that they have a clear nexus not only to the United States, but in the case of Murillo, direct interference with United States government operations. Why isn't this more like, I'm just talking about this fourth element, which is plainly jurisdictional, and then we'll get to whether or not they can exercise jurisdiction, seems to me to be arguably a separate but related question. The first issue is, did he have to know the victim was in fact an American national rather than a Haitian or something like that? Why isn't this like kidnapping, where the courts have said and we've said more than once that knowledge of crossing the state line is not an essential element of the kidnapping offense? The requirement that an offender cross the state lines simply furnishes a basis for the exercise of jurisdiction. Because in this case, Your Honor— Because in this case, Your Honor, the requirement is not only jurisdictional. And the Supreme Court has said in FIOLA that there's a difference between jurisdictional elements that are exclusively jurisdictional and jurisdictional elements that are not only jurisdictional. In this case, it's not only jurisdictional because we know that Part 1203b2 of the statute excludes from its scope the exact same kidnapping that happened in this case, except if Mr. Noel had been an American citizen who kidnapped another American citizen in the United States, then this statute wouldn't apply. So Congress wasn't trying to exercise full authority under either universal jurisdiction or the passive personality principle or even to go to the length that international law would permit. Congress had a very limited— Let me put the question in a slightly different way. Wouldn't the nexus or notice requirement be satisfied for due process purposes where it can be shown that the extraterritorial application of the law comports with the treaty itself and with international law? No, Your Honor. This is not a notice— Tell me why not. Because this is not a notice issue. The due process issue is not just about did you know what you were doing was illegal. That is dicta from the D.C. Circuit in the Ali case. But the Ali case is very different because it's premised on universal jurisdiction. Moreover, Ali, who was a Somali pirate, came to the United States and so was prosecuted under 1203b1b, not b1a. So he was found in the United States. And because piracy is punishable by universal jurisdiction, of course, it's like the classic universal jurisdiction crime, there you could—the only concern for the D.C. Circuit in that case would have been notice. But the due process inquiry in an extraterritorial statute case is not limited to notice. It's did you know you would be prosecuted in the United States, not— Let me ask the question again in a slightly different case, just looking to international law to the extent that we can as a source. Under the passive personality or victim theory, you know what I'm referring to in that respect, wouldn't a state have prescriptive jurisdiction over anyone? No. Let me finish. Anywhere who injures one of its nationals, that is to say jurisdiction itself is grounded on the nationality of the victim. No, Your Honor, that's not correct. In Murillo, Murillo distinguished Flores and Belzec-Hurtado, which relies on Flores, which is a Second Circuit case that this court has substantially adopted its own precedent in Belzec. Those cases say very clearly that a private party or private criminal activity is not subject to the passive personality principle and that ordinary crimes don't qualify. The passive personality principle applies in cases of an internationally protected— Suppose he kidnapped—let me rephrase it. So if I hear what you're saying, and I may have misunderstood it, if indeed a foreign defendant national seizes and kidnaps an American national for political reasons—terrorism, whatever—but still unbeknownst to him that the target victim is an American national, it's an act of international terror, would that be enough as applied in the case? That would be enough, Your Honor, and an example of that is the— Why the difference? What is it about the character of the kidnapping on foreign soil of a person unbeknownst to the defendant is an American national, where the kidnapping is for money, the kidnapping is for a political purpose? Why do I care what animates, what the motive is of the defendant in simply asking the question of whether there's a jurisdictional foundation and a sufficient nexus to answer a concern about due process? Because motive is the dividing line between vast swaths of law. It separates torts from crime, and in this case, it separates crime— With motive. With concern intent, I did an act, and I knowingly and willfully intended to do the act that I committed, as opposed to I was animated by a good purpose, a bad purpose, no purpose, which might be more general motive, and that's the distinction that I'm—because it seems to me what you're going to do is motive. Maybe I got that wrong. No, I think you're correct, Your Honor. So, for example, the case that Your Honor is hypothetically discussing is United States versus Eunice from the D.C. Circuit in 1991, and in that case, it involved an airplane hijacking, and there's no reason to believe that the hijackers knew there were any Americans on board the plane. There were, but they may not have known that. The difference is in cases like that, universal jurisdiction applies, and when universal jurisdiction applies, it's not an ordinary street crime because universal jurisdiction never applies to ordinary street crime, and neither does the passive personality principle, and all of these precedents make that very clear. What is your best case that, number one, that this street crime as opposed to terrorist political intent matters? What's the best case? And, secondly, does any such case hold—is there any case holding in the hostage-taking context that such a, quote, street crime would be immune? Your Honor, my best case is this Court's decision in Belize v. Hurtado, where this Court said that courts must exercise restraint in this area because ordinary street crimes—this can't be punished under Congress's power to define offenses under international law. So Belize v. Hurtado completely forecloses turning ordinary street crime in a foreign country into an international law crime. Belize v. Hurtado does not allow that whatsoever. And so it incorporates floors, it incorporates all these cases we're talking about. The government only—well, my time is more than up, so. Well, I have a question because it seems to me the first analysis is one of statutory interpretation of the statute. Do you agree with that, the first question is statutory interpretation? Yes, Your Honor, but there's no dispute about that today. Okay. And so the statute is silent. The statute itself has no mens rea requirement. You agree with that? The statute itself, on its face, has no mens rea requirement. It doesn't say anything about having to know the person was a U.S. citizen, does it? I think it does say nothing. I'm just talking about on its face. There's no mens rea requirement. I'll concede that, Your Honor. I don't remember off the top of my head, but I'll concede that. Okay. So the nature of your argument is what principle? Just a due process principle? Your Honor, the federal courts— Or they didn't have authority to enact this statute? It's unconstitutional because it doesn't have mens rea? Just characterize the nature of the argument. It's not statutory interpretation. What is it? The parties agree on this. The law is that whenever a statute applies extraterritorially, the due process concern that prosecutions not be arbitrary or fundamentally unfair—and different courts say it a different way, but that's the test—must be satisfied. It only applies to extraterritorial statutes when they're used extraterritorially, but in order for a federal court to exercise jurisdiction— But just like the federal officer statute, you didn't have to know the person was a federal officer. You still have a nexus here that it was a U.S. citizen. So why doesn't that satisfy that extraterritorial concern? Because the federal officer statute was territorial. It wasn't extraterritorial. Okay. So that's how you distinguish that. Right. So in the cases the government cites, like Lynn and Lew, were kidnappings in America. So those were also territorial applications of 1203. So they don't implicate this concern— If you've answered my question, you're over. I just wanted to know how you analytically looked at it. Thank you, Your Honor. Thank you. Good morning, Mr. Cohen. Good morning. May it please the Court. Jonathan Cohen on behalf of the United States. Respectfully, this is not a case involving customary international law under Belazec. Under Murillo, which was a street-level kidnapping crime abroad in a foreign country, and Ali, which involved the Hostage-Taking Act and the Hostage Convention, both Murillo and Ali held that a treaty—not universal jurisdiction, but a treaty—gave global notice that this crime could be prosecuted in the United States. In neither case did the defendants need to know the jurisdictional fact, which would Your argument, boiled down to its finest point, is twofold, if I've got it right. While you need mens rea to show there was a kidnapping, etc., you don't have to know for jurisdictional purposes that the victim is an American. Exactly, Your Honor. It's enough that he is an American. Your second argument, and it's the one I really would like you to help me with, is you get over the hump of due process and nexus because of the treaty itself that is the underpinning of 1203. Yes, Your Honor. As both the D.C. Circuit and the Fourth Circuit have held Murillo and Ali and Brehm, a treaty can give global notice that a person who commits a prescribed act would be subject to prosecution in signatory countries without having noticed that they will be prosecuted in a particular country. In Murillo, on page 157, it says, Fair warning does not require that the defendants understand they could be subject to criminal prosecution in the United States so long as they would reasonably understand that their conduct was criminal and would subject them to prosecution somewhere. It then cites the Brehm case in the D.C. Circuit, which was the basis of the D.C.'s Ali case, which held that the International Protected Persons Convention alone would give notice sufficient to satisfy due process. Tell me specifically what I will find in the treaty itself that will answer the question. The treaty, which... Entered into by the United States. Yes, Your Honor. The language in the treaty, first of all, is not limited to terrorism. Only one of the five preamble paragraphs refers to terrorism, but the operative language of in articles 5 paragraph 1D and article 10 all concern ways that a signatory country should properly get jurisdiction when its citizens are kidnapped for any purpose, including for ransom, third parties, or governments, not just governments. And it deals with the ways that the government should be able to establish jurisdiction to prosecute those cases. The IPP treaties in Murillo, jurisdictional requirements were almost identical. And this in the, I'm sorry, the Fourth Circuit held that that street-level crime satisfied due process. It was a perfect example. This was a... You have to use, though, the passive personality principle and apply it to the treaty to get there. I think it's an additional ground, Your Honor. I don't think it is a necessary ground. What Ali and Brehm held was that a treaty alone, and the Murillo case cites Brehm's holdings to this effect, that a treaty alone would give global notice to satisfy due process concerns because it's no trap for the unwary to know that you might be subject to prosecution for committing an obvious criminal act like kidnapping. His argument against that is that while that's true for an act that is in the nature of terrorism, it's not true for an act that is in the nature of a street crime. I haven't read the Fourth Circuit Murillo case yet, but of course I will. But I gather you say that is such a case that involves a mere street crime. Yes, Your Honor. The facts of Murillo involved a group of people in Colombia who, when they saw someone who looked like they might be wealthy entering a cab, would kidnap them. Which is very similar to this. Yes, Your Honor. It happened that that person was a DEA official, and that's what was the jurisdictional trigger which allowed prosecution in the U.S. courts. They specifically addressed whether both the statute or the due process would require knowledge of that jurisdictional fact. Of course, I realize the Ali case does not involve a mere street crime. It is something more like terrorism. Well, it was both a piracy case and a hostage act and hostage convention case. It wasn't terrorism in the sense of any political ideology or government targeting. It's purely, I mean, it's theft on a grand scale. You're seizing a vessel, seizing the cargo. And the hostage act, the court not least, had plainly applied to this situation. He argues that our case, Hurtado, Bella Zack Hurtado, supports his position that the street crime is different and therefore distinguishable from these cases. Would you respond to that? Yes, Your Honor. I don't think Bella Zack Hurtado respectfully has much application to this case at all. That was an MDLEA case involving trafficking in foreign waters, and it held as a constitutional matter that drug trafficking did not fall under Congress's authority to prosecute felonies against the law of nations. The question in Bella Zack Hurtado is whether drug trafficking was against the law of nations. As a constitutional matter, did Congress have the enumerated power to assert MDLEA jurisdiction under the law of nations clause? That's what Bella Zack Hurtado is about. In this case- So it's different there. Absolutely. It was conceded in Noel's initial brief. Okay, but so let's- Not only the foundation, the analytical approach there was whether or not under international law, either at the time of the Constitution or currently, drug trafficking was universally criminalized. And he said it wasn't, because some countries don't criminalize it. That was about Congress's enumerated power under the law of nations. Here it's conceded- Yes. Why is it reasonable to exercise jurisdiction in a case such as this where you're talking about exercising extraterritorial jurisdiction over a purely street crime on foreign soil committed by a foreign defendant who had no knowledge that the victim was an American and there's no apparent link that I can see to or on the United States? As in Murillo, there are two factors. First, there's whether there's notice, the due process notice idea, which is satisfied by the treaty. Second, whether it is arbitrary or a trap for the unwary that one might be hauled into court. And what Murillo addresses and what Ali addresses is that there is no unfairness in being hauled into an American court when it happens to be implicating the United States. Let me come at it this way. I was looking at the restatement, talking about exercising this kind of jurisdiction and asking what is and what is not reasonable and what might go into the mix in the calculation. Among other things, you'd look at the link, I suppose, between the activity on foreign soil to the territory of the regulating state. What's the link, if any, between kidnapping an American national on foreign soil for money in the United States, other than that the victim is an American? I mean, it is that the victim is an American. That's the beginning and the end of the story. That is the U.S. interest. I mean, that's the reason why the United States cares and decided to pass a statute or decided to be a party to the International Convention, which talks about countries wanting to have jurisdiction to protect their citizens when their citizens are abducted, either in foreign countries. How far does it go? What kinds of crimes fall within the extraterritorial application and what not? Kidnapping is, what else textually would be included? That's a difficult question. The Ninth Circuit had tried to address that in Neal. You understand why it's a relevant inquiry here? Yes. Because the proposition you're asserting runs the risk of opening the door to the extraterritorial application and American prosecution of a multitude of serious but disparate street crimes that occur on foreign soil that have nothing in the world to do with the United States, other than that the victim happens to be an American. And that's unbeknownst to the defendant. The limiting principle that the Ninth Circuit... What crimes are within and what crimes are without? It would be... If I look at the text itself. The text of the Hostage Act or the text of the Depressive Personality Principle and Restatement? Let's take it both ways. Okay. As to the Hostage Act, clearly both the convention excludes cases, for example, where there is the hostage convention would exclude cases where there is a kidnapping in one country by members of that country of victims in that country. The Hostage Act requires either that the kidnapper be a foreign national... No, no, that I understand. But what other crimes would be included within the Hostage Act? Within the Hostage Act? Yeah. I'm sorry. I may be precise. It applies to kidnappings or to seize or detain. Is there anything beyond kidnapping? It requires a seizure or detaining of a person, so I don't think it would. I think the Hostage Act itself applies to kidnapping. As to the broader... If you want me to address the broader... It has to be a ransom demand, too. I mean, this is not arguably a street crime. I mean, this is a high-level, sophisticated, serious crime. I mean, do you accept that this is just a street crime here under the hostage taking? I mean, I would not use that phrase. I think this is... Any time someone is seized as a person and taken hostage, whatever the demand is, it's not a pickpocket. And threatened to kill or detain unless money is paid. Or any other demand. It doesn't have to be money under the Hostage Act. It doesn't have to be man. So other demands, some other type of demand would satisfy. I mean, it could be a demand... Like you demand, release somebody in your prison or we won't release this person. I mean, yes. It could be a demand that's more terrorist. It could be a demand for any other action, commercial or otherwise, but this is a more serious crime. Do we have to decide anything other than this crime would qualify? I mean, just... That's the only question presented in this case. I mean, if the court is interested, I'm happy to try and find what would the limiting principle be. The Ninth Circuit said that when it is a crime specifically addressed by the United States in an international law context, for example, here, where you're supported by the hostage convention, that's a limiting principle. But it didn't, in the Ninth Circuit Neal case, ultimately need to decide what completely inclusive list of crimes would satisfy. I can say, for example, that this court has recognized that sex trafficking crimes in foreign countries that don't even involve U.S. citizens could... You know, there was the Basting case. I mean, there are all kinds of extraterritorial applications of U.S. law that have been upheld under both statutory and constitutional grounds by this court, but as you say, what's presented here is a statute that is acknowledged to be within Congress's enumerated powers because of its implementation of the hostage convention, which is a very similar treaty to the IPP Treaty, both jurisdictionally. The provisions listed in the Murillo case are almost identical, and there it was, what you want to call it, a street-level crime, or recognize the weight of seizing a person. In that case, the person was actually killed, but the kidnapping itself was prosecuted merely because he looked like a wealthy person who they could get something for. It happened that he was a U.S. official. The jurisdictional fact that he was a U.S. official was not something that the government needed to prove the defendant knew, and the Murillo court cited the fact of the implementation of the treaty as grounds for showing that that satisfied due process concerns, and as the D.C. Circuit held in Ely and the Fourth Circuit in Murillo and Brehm, treaties alone can provide that global knowledge. And actually, he said his complaint is not just about notice because the treaty could The other thing that his concern is that he didn't know he would be hailed into court anywhere, but doesn't the treaty itself say that, that a person could be brought to trial in any one of the countries that is a signatory to the treaty? Yes, Your Honor, and in fact, the treaty says in Article 10, Paragraph 4, that you should treat the crime for jurisdictional purposes as if it occurred in the territory of any country who was able to establish proper jurisdiction under Article 5 of the treaty, such as when its citizens are kidnapped. And the Ali case holds that it doesn't matter whether the country of origin of the defendant was a signatory, but here, is Haiti a signatory or not? You know, Your Honor, actually, I'm sorry, I don't know the answer to that question. The treaty was submitted, and I believe its signatory list was included, so I hope that would answer your question, and I apologize for not having that on top of my head. But as to the specific question of whether it's arbitrary or unfair to be hauled into the United States, Murillo and Ali directly addressed whether it's arbitrary to be hauled into court in the United States, and both found that there was no due process violation. And in Ali, Somalia had not signed. I don't know about the Fourth Circuit case. Again, Your Honor, I don't immediately recall that, but given the state of Somalia and certainly the lawlessness of the region where the seizure took place, I would expect that to be the case. What's important is that the United States is the signatory, and it has shown to the Let me ask you a final question. Time is short, but to what extent does your argument turn at least in part on the application of the passive personality principle in this context? I think it's an additional helpful factor, but it is not a required factor. You don't need it because you say the treaty is clear, the foundation for the statute. I believe that both Murillo and Ali would support a finding of this court based solely on the treaty. Based on the treaty. Yes, Your Honor. And it's implementing legislation in 1203. Yes, Your Honor. Of course, the passive personality principle provides additional grounds. Thank you. Thank you, Your Honor. So there's a lot of confusion about exactly how all this works, so let me try to start with Belize Accurtado. The reason this case is relevant and controlling is because Belize Accurtado sets out the three sources of power that Congress has to act extraterritorially. Piracy clause, offenses clause, felonies clause. Piracy covers universal jurisdiction, it covers things like hijacking an airplane. The offenses clause covers things that are punishable under customary international law, which would include, for example, the kidnapping in a terrorist sort of situation. And the felonies clause only punishes conduct on the high seas, which isn't implicated here. So we're left with the offenses clause, and this court said that the offenses clause is limited by international law itself. And what this court said on page 1249 is, whether the offense as defined is an offense against the law of nations depends on the thing done, not on any declaration to that effect by Congress. So the question is not whether the treaty gave notice that you could be prosecuted anywhere. The question is whether the treaty gave notice that a normal, everyday kidnapping that happens in Haiti all the time and Mexico all the time, regular street crime, whether a person who sets out to just commit a regular, everyday kidnapping in a third world poor country would know that he is violating an international treaty. And there is no indication in the record that that is satisfied. And that has to be satisfied. Because this is not a statute passed under the interstate commerce clause or necessary improper clause or any of the usual things that we're used to in federal court. This is a statute passed under a very limited power, and that power is limited to customary international law, and an ordinary kidnapping is not against the law of nations. How do we know that? We know that because United States v. Flores said so, and United States v. Flores is approved extensively in Belasio-Curtado. The Second Circuit said private crime is not part of customary international law. Murder of one private party by another, although universally prescribed by the domestic law of all countries, is not actionable as a violation of customary international law because the nations of the world have several, not mutual concern. So oil down to a simple example. A kidnapper who kidnaps an American national for money and nothing more, nothing less is without the jurisdiction of the United States extraterritorially, whereas a kidnapper who is a terrorist and kidnaps an American, again for money, but the money is to be used to Yes, Your Honor, and I'll tell you why. So it all turns on the motive. Murillo supplies the answer. On page 157. Before you get to Murillo, motive would be the critical distinction, the two circumstances I gave you. Yes, and Murillo on page 157 explains why. I understand that we don't like to have case-by-case adjudication on complicated things, it'd be better to have a bright-line rule, but this isn't an area of law amenable to bright-line rules. Murillo on 157 said, it is not arbitrary to prosecute a defendant in the United States if his actions affected significant American interests. That's why murdering a DEA agent in the back of a taxi cab is, in fact, punishable in the United States, even if you didn't know it was a DEA agent. Why? Why? Because the interests of the nation are significant, and unless this court wants to be the very first court to ever read the word significant right out of the analysis and domesticate every crime against any American anywhere in the world, because there is no limiting principle to this, because, in fact, it's not rooted in the fact that Well, the crime here is hostage-taking. The crime isn't rape, it isn't assault, it isn't armed robbery, it's kidnapping, and that falls within the ambit of 1203 and the underlying treaty. So we're limited to begin with this particular statute, which is dealing with a particular kind of crime, which is pegged to a particular treaty, right? Yes, Your Honor. But the treaty needs to be interpreted in context, not by taking words and parts of the statute out of context. And in context, B-1 describes three crimes. Each of those gives the United States, properly read, a significant interest in prosecuting hostage-taking, but that is not present as applied in this case. If the exact same crime had happened and Mr. Noel had kidnapped his victim to, as Your Honor said, get the United States to release some prisoner or extend the TSP for Haitian Now we're talking about significant U.S. interests. The court in Lynn identified two specific interests that Congress can further with this power to define customary international law offenses, foreign policy and immigration. Okay, so if I understand it, before this statute can be applied to the extraterritorial application of a hostage taken for purpose, kidnapped for the purposes of money, and the person is an American, you've got to show something more, and the something more you have to show is a significant interest, and significant cannot be satisfied simply because it was an American. You need something more, something different, like animation for a terrorist purpose. It's as simple as that. 100% correct, Your Honor. Or a DEA. Let me ask the question in this way. What significance, if any, ought we to attach to the actual treaty itself? I'm talking about Article 5 and things like that. Among other things, it says the jurisdiction is to be established with respect to a hostage who is a national of that state, if the state considers it appropriate. Congress promulgates 1203, or then it says, I'm talking about the underlying treaty or convention says, each state party shall take such measures as may be necessary to establish its jurisdiction over hostage taking offenses under the treaty. So the treaty itself recognizes that an implementing state may do this. Yes, Your Honor. The only question is why can't this state do just that? Because Congress lacks the power to do that. There's no clause in the Constitution that allows Congress to make a domestic issue claim. And see, to me, your argument has morphed, and I just read your reply brief, which addresses this more than your, I just read your first brief. I don't get this argument in the first brief. I see it in the reply brief, for sure, but let me ask you two questions. Let's assume the government proved he knew this was an American. That's why he was doing it. Okay. As I take it, your argument would be no different. It doesn't matter if the defendant knew this was American. Your argument here is Congress lacked the power to do it. I think if somebody... It doesn't, yes or no. If he knew that this was an American at the time... Then yes, you could prosecute. You could prosecute. I believe so. This is not, this is not this case. That is not this case. I understand. There's no doubt here. But it goes back to... I'm trying to understand your constitutional argument. You're really trying to make a constitutional argument when you go to the offenses clause. You're saying they didn't have the power to enact this statute without a mens rea. Is that what you're saying? What I'm saying... Let me answer the first part first and then the second part. So this goes back to what Judge Marcus was saying about motive. I think if a foreigner deliberately targets an American knowing it's an American, that's a significant American interest. I would... Okay. That's not this case, but I would argue that. So you're saying that's a significant American interest. Yes. Like a federal agent or an ambassador or somebody like that. So it's going to turn on what the defendant knew, whether Congress can prosecute, whether the United States can prosecute this. At the end of the day, you're saying it's what the defendant knew or didn't know. Many statutes are like that, Your Honor. I'm not trying to argue. I'm just trying to understand your argument. Yes. Yes. Yes. I am saying that. Yes. Okay. If I understand the argument boiled down to its finest point, you concede there would be no due process problem if the foreign national knew the hostage was an American, even if the purpose was simply money, nothing more. I think that's as far as Congress can possibly go, yes. So if that's what you had, if the defendant knew that the victim was an American, your due process argument collapses. You're not making it. I think the United States could- I don't want to quibble with it, but that's what you said to Judge Hull. You would concede that there is jurisdiction. I would concede that that's arguable, yes. I would say that the United States could then say significant American interests were implicated. So the question is, here where they didn't know, he didn't know that he was an American, whether there was some other source or basis. That's why we're looking at the treaty. That's why we're looking at these principles of international law, questions of passive personality, et cetera. Your Honor, Congress only has so many powers, and a treaty can't expand the powers under the Constitution. So whatever the treaty says, Congress has to punish offenses under customary international law, and that's not this case. So I don't know what source of power the United States thinks that Congress can prosecute this crime under, but I don't know of any. Thanks. It's just interesting to me that whether or not Congress had power to do this depends- because they didn't put a mens rea in the statute. Now it's going to depend upon what the defendant knew. I mean- But that's always- How do you know whether to prosecute it or not, because you may not in any event- Based on the evidence. The government decides- You don't prosecute it until, you know, you don't have all the evidence at the time you prosecute it. The government has to have probable cause to bring an indictment. They have evidence before they indict in every single case. They'd have to know that he knew before they could have probable cause to get an indictment. They have to have- Yes, Your Honor. Okay. They have to have probable cause- And I'm curious in this case, suppose the victim says during the course of the hostage, just to follow up on your play of this out, I'm an American citizen, don't- my government's going- you know, she might have revealed it. Do we know whether she revealed it here? And the record shows no reason to suspect that he had- Okay. So let's take the next scenario just to play this out. Suppose the victim during the course of the hostage taking, and it continues, tells him I'm an American citizen, and he continues to do it and demand the money. Would that be okay? I think that's a jury question at that point. Whether the defendant believed it, whether he withdrew, whether he made effort to say I don't want to mess with the United States. I want to withdraw from this right this moment. It's a jury question at that point. That's what you're in for. Okay. That's why whether the statute applies or not, to me, it's just hard to say it depends on the defendant's knowledge. Extraterritoriality is complicated. It may not be that complicated, that it depends on the defendant's knowledge. It's because this court has already- It may depend on his conduct. Well, the Beliza Curtado opinion, you know, really lays out that Congress's hands are very tied and limited. I've heard that five times. I agree with that, but it's a totally different fact. Anyway, thank you. Thank you, counsel. Thank you both for your efforts. It's an interesting case. We'll go on to the last case of the morning.